USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/8/09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
In re STATE STREET BANK AND
TRUST CO. FIXED INCOME FUNDS          08 md 1945 (RJH)(DFE)
INVESTMENT LITIGATION                 (This is an ECF case.)
                                      MEMORANDUM AND ORDER
---------------------------------x
HOUSTON POLICE OFFICERS'
PENSION SYSTEM, Plaintiff,            08 Civ. 0333 (RJH)(DFE)
                                      (This is an ECF case.)
    - against -                       MEMORANDUM AND ORDER

STATE STREET BANK AND TRUST CO.
and STATE STREET GLOBAL ADVISORS,
INC., Defendants.
---------------------------------x
```

DOUGLAS F. EATON, United States Magistrate Judge.

   In today's Memorandum and Order, I shall discuss the joint letter dated April 1, 2009 from Mr. Burford on behalf of plaintiff Houston Police Officers' Pension System ("HPOPS") and from Mr. Skinner on behalf of defendants State Street Bank and Trust Company and State Street Global Advisors, Inc. (collectively, "State Street"). The letter came with a large box of exhibits.

   **1. HPOPS's practice of redacting a portion of a document on the ground that the portion is non-responsive and irrelevant.**

   In a letter dated February 17, 2009, a different attorney who also represents HPOPS wrote: "[R]edacted documents in the production are not included on the privilege log because generally we redacted documents to remove non-responsive materials, as opposed to privileged information." (Exh. C.)

   State Street cites *Howell v. City of New York*, 2007 WL 2815738, *2 (E.D.N.Y. Sept. 25, 2007), in which Magistrate Judge Pohorelsky wrote: "It is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant." On the other hand, HPOPS quotes the following passage from *Spano v. Boeing Co.*, 2008 WL 1774460, *2 (S.D. Ill. Apr. 16, 2008):

> The Court also rejects Plaintiffs' argument that redaction is an improper method of challenging the

-1-

relevance of a document. Although not specifically addressed in the Rule, other courts have found redaction appropriate where the information redacted was not relevant to the issues in the case. *See ... Schiller v. City of New York*, 2006 WL 3592547 at *7 (S.D.N.Y. Dec. 7, 2006) (upholding redaction of portion of meeting minutes not relevant to issues in a case). ...

In *Schiller* at *6, Magistrate Judge Francis allowed a group that organized a protest march to redact the names of its members. At *7-8 he discussed several other redactions based on lack of relevance; he allowed some and disallowed others, taking pains to make careful distinctions. That judicial effort was necessary because the group invoked free speech rights against government attorneys, and hence the dispute could not be solved by simply designating the unredacted minutes for "attorneys'-eyes-only." See *5, n. 5; see also *The New York Times Co. v. Gonzales*, 459 F.3d 160, 170 (2d Cir. 2006) (free press rights).

**In the case at bar, the stipulated protective order makes it unnecessary to redact any portion of a document on the ground that the portion is non-responsive and irrelevant. In all the cases embraced under 08 md 1945, I direct each party, and each subpoenaed non-party, not to make any such redaction after April 8, 2009.** In my view, such redactions are generally unwise. They breed suspicions, and they may deprive the reader of context. Rule 26(b)(1) says that information is relevant as long as it "appears reasonably calculated to lead to the discovery of admissible evidence."

I now consider what to do about such redactions that were made prior to April 9, 2009. On the present record, State Street fails to persuade me that I should compel HPOPS to unredact all of its tedious busywork. State Street's one specific complaint is quite strained; it writes at page 2:

> ... A comparison ... with a non-redacted version ... located elsewhere in HPOPS's production shows [as follows:] One of the redacted portions from the board minutes [of HPOPS says]: "Mr. Olson advised that the number of retirements is picking up. So far this calendar year there have been 37 retirements. There are also approximately 250 more members eligible for DROP entry this year, so there may be an increase in the number of retirements."

State Street fancies that this shows "HPOPS's need for greater

investment returns in its portfolio - - and thus its appetite for risk ...."

I rule that State Street may use the following protocol to challenge pre-4/9/09 redactions that appear to be made solely on the ground of non-responsiveness or irrelevance. At any time, State Street may specify three redacted documents and serve HPOPS with a demand that HPOPS submit those documents to me for an *in camera* ruling. HPOPS must submit them to me unless, within three business days, it has shown State Street the full text of at least one of the documents. At this point, State Street will have two options: (a) demand that HPOPS submit any remaining one or two documents to me immediately, or (b) engage in successive rounds of specification and prompt response until State Street chooses to demand that HPOPS send me one, two or three of the documents still in dispute. At that juncture, I will rule on the *in camera* examples, and I may order HPOPS to unwind all such redactions, and I may award attorneys fees against HPOPS or against State Street.

The same protocol may be used by any party that has a dispute with any party or subpoenaed non-party about similar redactions made on or before April 8, 2009.

## 2. **The extent to which HPOPS must provide documents concerning its investments in commodities, fixed income or cash fund strategies.**

In the 4/1/09 joint letter, starting at page 7, second paragraph, line 8, HPOPS sets forth in detail the discovery that it has provided and/or commits that it will provide concerning its investments in the above strategies, even where State Street was not involved. I find that this commitment will give State Street everything it is entitled to receive from HPOPS concerning this category. At page 8, State Street's reply addresses only one portion of HPOPS's commitment. In a footnote, State Street says: "HPOPS has since agreed to revise its search terms, and we understand that, at some point in the future, HPOPS will produce all marketing or promotional materials, client presentations, articles and the like concerning asset-backed and mortgage-backed securities and derivatives."

## 3. **HPOPS's list of ten categories as to which it asks State Street to produce ten separate groups of documents, or to identify ten separate sets of Bates-number-ranges.**

The ten categories are spelled out by HPOPS at pages 10-13 of the 4/1/09 joint letter. State Street does not give a

response specific to any of the ten categories. At the top of page 14, it says: "State Street has also provided detailed indices of its production, indicating by Bates range the custodian or other source file of the documents. These features ... allow the plaintiffs to focus on those custodians and document categories of most relevance to their case ...." I believe, although I am not sure, that this is a sufficient response to Category #5, which lists the names of 28 custodians.

On the other hand, I find that State Street has not given an adequate response to the other nine categories. Mr. Skinner sends me Exhibit G, which consists of 19 letters sent by him to the attorneys representing various plaintiffs. But he does not show me how these letters enable HPOPS to find the documents pertaining to the nine categories. The first paragraph of HPOPS's reply, at pages 15-16, seems to be accurate when it says: "For example, nowhere in the cover letters is there a category listed that would enable HPOPS to determine where the monthly holding for CMY1 would be located. [See Category #1] .... Likewise, there is no category in the cover letters identifying where HPOPS can locate the information it needs to determine what holdings were liquidated or redeemed-in-kind to the participants of the CMY1 Fund or [to] the [other] State-Street-managed funds that owned units of CMY1. [See Categories #6 and #7]"

I agree with State Street that "[a] central goal of multi-district litigation is efficiency through consolidated discovery." But I find that HPOPS has shown good cause why State Street should give a separate, tailored response to each of Categories #1 through #10. A few of those Categories may be worded too broadly, but State Street's remedy is to meet and confer with HPOPS. In the words of my Standing Order for Discovery Disputes, the attorneys must "make a genuine effort to resolve the dispute by determining, without regard to technical interpretation of the language of a request, (a) what the requesting party is actually seeking, (b) what the discovering party is reasonably capable of producing that is responsive to the request, and (c) what specific genuine issues, if any, cannot be resolved without judicial intervention."

*Douglas F. Eaton*
DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181fax

-4-

Dated:     New York, New York
           April 8, 2009

Copies of this Memorandum and Order will be sent by electronic filing to all counsel, and to:

Robert R. Burford, Esq. at fax 713-222-1475fax
Robert A. Skinner, Esq. at fax 617-951-7050fax

Hon. Richard J. Holwell