UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| IN RE STATE STREET BANK AND TRUST CO. FIXED INCOME FUNDS INVESTMENT LITIGATION | MDL No. 1945 |

---

| | |
|---|---|
| MEMORIAL HERMANN HEALTHCARE SYSTEM AND THE HEALTH PROFESSIONALS INSURANCE COMPANY, LTD., | |
| Plaintiffs, | No. 08 Civ. 5440 (RJH) |
| v. | |
| STATE STREET BANK & TRUST COMPANY, | |
| Defendant. | |

---

| | |
|---|---|
| HOUSTON POLICE OFFICERS' PENSION SYSTEM, | |
| Plaintiffs, | No. 08 Civ. 5442 (RJH) |
| v. | |
| STATE STREET BANK & TRUST CO. and STATE STREET GLOBAL ADVISORS, INC. | |
| Defendants. | |

---

**STATE STREET'S OPPOSITION TO PLAINTIFFS'
MOTIONS FOR SUGGESTION OF REMAND**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................3

I.    LEGAL STANDARD FOR SUGGESTION OF REMAND ................................................3

II.   REMAND AT THIS TIME WOULD REQUIRE DUPLICATION OF JUDICIAL RESOURCES AND RISK THE POSSIBILITY OF INCONSISTENT RULINGS ON COMMON ISSUES OF FACT AND LAW ..................................................................4

    A.   The Court's familiarity with the complex issues presented makes it uniquely suited to manage pretrial proceedings. ...................................................................4

    B.   The central unresolved pretrial issues, including the impending motions for summary judgment, continue to relate to the same set of core questions..................6

    C.   This Court should preside over pretrial proceedings at this stage to prevent inconsistent outcomes. ............................................................................................12

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

CASES

*In re Agent Orange Product Liability Litigation*,
  304 F. Supp. 2d 404 (E.D.N.Y. 2004) ........................................................................3

*In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*,
  407 F. Supp. 244 (J.P.M.L. 1976) ...............................................................................8

*In re Air Crash Disaster at Tenerife, Canary Islands on March 27, 1977*,
  461 F. Supp. 671 (J.P.M.L. 1978) .........................................................................10, 11

*In re Armored Car Antitrust Litigation*,
  462 F. Supp. 394 (J.P.M.L 1978) ................................................................................8

*In re Baseball Bat Antitrust Litigation*,
  112 F. Supp. 2d 1175 (J.P.M.L. 2000) ......................................................................10

*In re Brand-Name Prescription Drugs Antitrust Litigation*,
  264 F. Supp. 2d 1372 (J.P.M.L. 2003) ......................................................................11

*In re Bridgestone/Firestone Inc. Tires Products Liability Litigation*,
  128 F. Supp. 2d 1196 (S.D. Ind. 2001) .......................................................................3

*In re Cessna 208 Series Aircraft Products Liability Litigation*,
  MDL No. 1721, 2009 WL 1357234 (D. Kan. May 12, 2009) ..................................13

*In re Cessna 208 Series Aircraft Products Liability Litigation*,
  MDL No. 1721, 2010 WL 934268 (D. Kan. Mar. 11, 2010) ....................................11

*In re Citigroup Inc. Capital Accumulation Plan Litigation*,
  MDL No. 1354, 2008 WL 3982065 (D. Mass. Aug. 8, 2008) .................................10

*In re Data General Corp. Antitrust Litigation*,
  510 F. Supp. 1220 (J.P.M.L. 1979) .............................................................................8

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993) ..................................................................................................13

*In re Diet Drugs Products Liability Litigation*,
  MDL No. 1203, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001) .....................................13

*In re Evergreen Valley Project Litigation*,
  435 F. Supp. 924 (J.P.M.L. 1977) .............................................................................10

*In re Fedex Ground Package System, Inc. Employment Practices Litigation*,
  MDL No. 1700, 2010 WL 415285 (N.D. Ind. Jan. 22, 2010) ..................................11

*F.W. Webb Co. v. State Street Bank and Trust Co.*,
   No. 09 Civ. 01241 (RJH) .................................................................................................. 5

*In re Gypsum Wallboard*,
   340 F. Supp. 990 (J.P.M.L. 1972) ........................................................................ 3, 5, 6, 10

*In re H&R Block, Inc.*,
   435 F. Supp. 2d 1347 (J.P.M.L. 2006) .......................................................................... 1, 15

*In re Helicopter Crash*,
   542 F. Supp. 2d 1362 (J.P.M.L. 2008) .............................................................................. 6

*In re Heritage Bonds Litigation*,
   217 F. Supp. 2d 1369 (J.P.M.L. 2002) .............................................................................. 4

*In re Holiday Magic Security & Antitrust Litigation*,
   433 F. Supp. 1125 (J.P.M.L. 1977) ................................................................................... 5

*In re Insurance Brokerage Antitrust Litigation*,
   MDL No. 1663, 2009 WL 580238 (D.N.J. Mar. 3, 2009) ............................................. 11

*In re Insurance Brokerage Antitrust Litigation*,
   MDL No. 1663, 2009 WL 1874085 (D.N.J. June 30, 2009) ......................................... 11

*In re Insurance Brokerage Antitrust Litigation*,
   MDL No. 1663, 2009 WL 4796662 (D.N.J. Dec. 9, 2009) ........................................... 11

*In re Integrated Resource, Inc.*,
   No. 92 Civ. 4555 (RWS), 1995 WL 234975 (S.D.N.Y. Apr. 21, 1995) .......................... 5

*In re Integrated Resource, Inc. Real Estate Ltd. Partnerships Security Litigation*,
   851 F. Supp. 556 (S.D.N.Y. 1994) ................................................................................. 3, 9

*In re Janus Mutual Funds Investment Litigation*,
   310 F. Supp. 2d 1359 (J.P.M.L. 2004) .............................................................................. 9

*In re King Resource Co. Security Litigation*,
   458 F. Supp. 220 (J.P.M.L. 1978) ................................................................................... 10

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998) ......................................................................................................... 3, 12

*In re Meridia Products Liability Litigation*,
   328 F. Supp. 2d 791 (N.D. Ohio 2004) ...................................................................... 10, 11

*In re Merrill Lynch Auction Rate Security Litigation*,
   No. 09 MD 2030 (LAP), 2010 WL 532855 (S.D.N.Y. Feb. 8, 2010) ......................... 3, 4

*In re Multidistrict Civil Actions Involving Air Crash Disaster Near Dayton, Ohio, on
March 9, 1967*, 386 F. Supp. 908 (J.P.M.L. 1975) ............................................................ 10

*In re Mutual Funds Investment Litigation,*
   590 F. Supp. 2d 741 (D. Md. 2008) ............................................................................. 9, 10

*In re Mutual Funds Investment Litigation,*
   626 F. Supp. 2d 530 (D. Md. 2009) .................................................................................. 10

*In re Ocean Bank,*
   481 F. Supp. 2d 892 (N.D. Ill. 2007) ................................................................................ 13

*In re Orthopedic Bone Screw Products Liability Litigation,*
   MDL No. 1014, 1998 WL 118060 (E.D. Pa. Jan. 12, 1998) ............................................ 11

*In re Patenaude,*
   210 F.3d 135 (3d Cir. 2000) ......................................................................................... 4, 12

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
   685 F. Supp. 2d 186 (D. Mass. 2010) ............................................................................... 10

*In re Phenylpropanolamine Products Liability Litigation,*
   MDL No. 1407, 2004 WL 2034587 (W.D. Wash. Sept. 3, 2004) .................................... 11

*In re State Street Bank & Trust Co. ERISA Litigation,*
   579 F. Supp. 2d 512 (S.D.N.Y. 2008) ................................................................................ 5

*In re Wilson,*
   451 F.3d 161 (3d Cir. 2006) ............................................................................................. 12

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
   498 F. Supp. 2d 25 (D.D.C. 2007) ........................................................................... 3, 5, 12

Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts,* 78 F.R.D. 575 (1978) ................................................................................................ 3

*Yu v. State Street Corp.,*
   686 F. Supp. 2d 369 (S.D.N.Y. 2010) ................................................................................ 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2) ............................................................................................................. 13

Defendants State Street Bank and Trust Company and State Street Global Advisors, Inc. (collectively, "State Street") respectfully submits this memorandum in opposition to the Motions for Suggestion of Remand brought by Plaintiffs Memorial Hermann Healthcare System and the Health Professionals Insurance Company, Ltd. (collectively, "Memorial Hermann"), and the Houston Police Officers' Pension System ("HPOPS").

## PRELIMINARY STATEMENT

The purpose of centralized multidistrict litigation is to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, conserve the resources of the parties, their counsel, and the judiciary, and promote just and efficient conduct of the litigation." *In re H&R Block, Inc.*, 435 F. Supp. 2d 1347, 1348-49 (J.P.M.L. 2006). Memorial Hermann and HPOPS now ask this Court to suggest to the Judicial Panel on Multidistrict Litigation (the "Panel") that their cases be remanded to their transferor courts – separate judges in the Southern District of Texas – contending that centralized proceedings have "run their course" and that all that remains to be determined in the actions is "case-specific."

Parties seeking a suggestion of remand prior to the close of pretrial proceedings bear the burden of showing good cause for such early remand. Memorial Hermann and HPOPS cannot satisfy that burden here, as the centralized pretrial proceedings in this MDL are still very much underway and serving their intended purpose. Tomorrow, June 2, 2010, is the deadline for dispositive motions under the Court's scheduling order. State Street will serve summary judgment motions seeking dismissal of all claims asserted by Memorial Hermann and HPOPS, as well as those asserted by plaintiff Prudential Retirement Insurance and Annuity Company ("PRIAC"). All three motions will be based upon similar legal theories, and will feature many common questions of law and fact – as has been true of these three cases since their inception. Questions of law regarding the failure to allege any actionable misrepresentation, the failure to

mitigate, superseding cause, and the failure to establish proximate causation for any injuries, are all common among the motions. HPOPS and PRIAC have indicated in letters to the Court that they also intend to serve summary judgment motions tomorrow. It would directly contravene the goals of judicial efficiency and consistency of rulings to have these related motions decided by three separate judges – particularly where this Court has over two years' worth of experience in this MDL and with the issues addressed in the motions.

The commonalities among the cases is further highlighted by the roster of expert witnesses. Memorial Hermann and Houston Police have two overlapping experts: both plaintiffs have designated J. Philip Ferguson and Lawrence P. Weiner as putative experts in their cases. State Street will move tomorrow to strike the reports of both experts in both cases. Not surprisingly, these motions overlap substantially, as the infirmities in the reports are very similar across the two cases. Here again, it would make no sense from an efficiency or consistency perspective to have these motions decided by different judges, neither of whom would have the benefit of this Court's familiarity with the issues.

Although there are of course certain "case-specific" issues that may ultimately warrant separate trials for these cases in the event summary judgment is not granted, these distinctions did not stand in the way of efficient consolidated discovery for the last two years – nor do they warrant a premature decoupling of these cases at the pivotal moment of dispositive motion practice. Centralized pretrial proceedings have served the parties and the court system very well in this instance, and this MDL should continue at least until the present round of dispositive and other related motions are decided.

## ARGUMENT

### I. LEGAL STANDARD FOR SUGGESTION OF REMAND

It is well settled that "[o]nce a case has been transferred by the Panel, the transferee court assumes complete jurisdiction for pretrial purposes" and "has authority to decide all pretrial motions including dispositive motions such as those for summary judgment." *In re Agent Orange Prod. Liab. Litig.*, 304 F. Supp. 2d 404, 416 (E.D.N.Y. 2004) (citing Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 584 (1978)); *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 37 (D.D.C. 2007) ("[P]retrial proceedings do not conclude until a final pretrial order is entered, and []all prior proceedings – including rulings on motions for summary judgment – are pretrial proceedings that may properly remain before the transferee court." (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998)).

A "party seeking remand to the transferor court has the burden of establishing that such remand is warranted," *In re Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994) (citations omitted), and "[r]emand should only occur upon a showing of good cause." *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030(LAP), 2010 WL 532855, at *5 (S.D.N.Y. Feb. 8, 2010) (citing *Integrated Res.*, 851 F. Supp. at 562 ("The Panel has made it clear that it will 'remand an action . . . prior to completed pretrial proceedings only upon a showing of good cause.'"); *see also In re Gypsum Wallboard*, 340 F. Supp. 990, 992 (J.P.M.L. 1972) (holding that "plaintiff has not demonstrated to us that remand at [the summary judgment stage] would promote the just and efficient conduct of this litigation").

Whether a Court should issue a suggestion of remand is a matter that is "guided by the standards for remand employed by the Panel." *See, e.g., In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001). "The Court's discretion to

suggest remand generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030(LAP), 2010 WL 532855, at *5 (S.D.N.Y. Feb. 8, 2010) (internal quotations omitted). Thus, "[r]emand should not occur when continued consolidation will 'eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.'" *Id. In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030(LAP), 2010 WL 532855, at *5 (S.D.N.Y. Feb. 8, 2010) (quoting *In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002)).

## II. REMAND AT THIS TIME WOULD REQUIRE DUPLICATION OF JUDICIAL RESOURCES AND RISK THE POSSIBILITY OF INCONSISTENT RULINGS ON COMMON ISSUES OF FACT AND LAW

### A. The Court's familiarity with the complex issues presented makes it uniquely suited to manage pretrial proceedings.

Memorial Hermann and HPOPS argue that the MDL proceedings have served their purpose, suggesting that centralization will no longer "prevent inconsistent pretrial rulings" or "conserve the resources of the parties, their counsel and the judiciary." *See* Memorial Hermann Mem. at 5-7 (asserting that "all 'coordinated or consolidated pretrial proceedings' that involve Memorial Hermann will be completed when expert discovery closes on May 26, 2010," and that "[a]t that time, this Court's role under Section 1407 will have ended"); HPOPS Mem. at 7 ("[T]he Action no longer can benefit from coordinated pretrial proceedings in this Court."). Yet Plaintiffs discount the efficiency of having the MDL Court rule on issues with which it has already become familiar.

Courts routinely point out that a key benefit of consolidated proceedings is the avoidance of "'the possibility and conflict and duplication' of . . . the judge's time and energy spent becoming familiar with the recurring issues of [the] litigation, [and its] the major players." *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000). Indeed, "[i]t is a fundamental assumption of the

- 4 -

multidistrict system that having only one court sort out the facts of complex and multi-faceted transactions and occurrences which have given rise to many competing legal claims well serves the goal of judicial economy." *See In re Integrated Res., Inc.*, No. 92 Civ. 4555 (RWS), 1995 WL 234975, at *4 (S.D.N.Y. Apr. 21, 1995). Accordingly, an important consideration in whether to remand prior to the conclusion of pretrial proceedings is whether the transferee judge has become educated in the issues of the case; if so, the transferee judge's determination of pretrial questions promotes judicial economy. *See, e.g., U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007) (remand of MDL case would be inappropriate at summary judgment stage; in light of court's familiarity with the issues in the case, which "encompass[ed] a voluminous docket – as well as the many related issues in the other cases in [the] MDL," it would be "much more efficient to proceed to summary judgment motions in [transferee] Court rather than to ask the transferor court to play catch-up").

Over the nearly two years that these cases have been consolidated, including rulings on prior motions to dismiss,[1] the Court has developed an understanding of the complex issues related to the fixed income securities markets, and in particular the issues surrounding securities collateralized by subprime. Because remand in this case would require two other courts "to make [their] own way[s] up this same learning curve," remand would "result[] in just that duplication of efforts that the multidistrict system is designed to avoid." *See Integrated Res., Inc.*, 1995 WL 234975, at *4 (rejecting suggestion to remand because nearly all other consolidated cases had been settled, stating that "a key principle of the multi-district scheme involves the accrual of judicial expertise") (citing *In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)); *In re Gypsum Wallboard*, 340 F. Supp. at 992 (stating

---

[1] *In re State Street Bank & Trust Co. ERISA Litig.*, 579 F. Supp. 2d 512 (S.D.N.Y. 2008); *Yu v. State Street Corp.*, 686 F. Supp. 2d 369 (S.D.N.Y. 2010); *F.W. Webb Co. v. State Street Bank and Trust Co.*, No. 09 Civ. 01241 (RJH) (motion to dismiss pending).

that court's "familiarity with this litigation affords the parties the opportunity of an expeditious resolution" of the pending motion for summary judgment); *In re Helicopter Crash*, 542 F. Supp. 2d 1362, 1363 (J.P.M.L. 2008) ("Indeed, the transferee judge has developed a familiarity with the allegations, issues, parties and counsel involved in this docket, which will further the expeditious resolution of the litigation taken as a whole.").

**B.   The central unresolved pretrial issues, including the impending motions for summary judgment, continue to relate to the same set of core questions.**

Disregarding this, both Memorial Hermann and HPOPS argue that their cases should be remanded because all remaining pretrial proceedings after the close of expert discovery are case-specific. Memorial Hermann Mem. at 6; HPOPS Mem. at 2. But Memorial Hermann and HPOPS ignore the plentitude of core factual issues that are still common among the remaining cases in the MDL, and they underestimate the need and value of coordination at this stage of the pretrial proceedings. State Street plans to submit motions for summary judgment regarding the claims of Memorial Hermann, HPOPS and PRIAC, all of which involve similar legal theories and a similar core of facts. Indeed, the allegations made in the HPOPS and Memorial Hermann complaints, as well as opinions proffered by their putative experts, belie their assertions that each case rests on distinct foundations. For example:

- Both were invested in the Limited Duration Bond Fund ("LDBF"), and both argue that LDBF was not managed in accordance with it purported investment objective of "maximizing income while preserving capital." See HPOPS Compl. ¶ 2; Memorial Hermann Compl. ¶ 29.[2]

- Both argue that it was inappropriate for LDBF to concentrate in home equity and subprime-related ABS in order to achieve its objective. HPOPS Compl. ¶ 47 ("State

---

[2] "Memorial Hermann Compl." refers to the Second Amended Complaint filed by Memorial Hermann on March 14, 2008.

Street should have known it was embarking on a reckless investment strategy . . . . The imminent collapse of the subprime lending industry was widely documented."); Memorial Hermann Compl. ¶ 15 ("The Fund was unjustifiably and recklessly comprised mainly of complex and illiquid instruments structured from non-conforming residential first- and second- mortgages, much of which possessed dubious credit quality. As a result, the Fund's portfolio constituted a one-sided and reckless bet on sub-prime . . . .").

- Both argue that LDBF was insufficiently diversified. *See* HPOPS Compl. ¶¶ 34, 37, 38, 44; Memorial Hermann Compl. ¶ 29.

- Both argue that State Street breached its fiduciary duty to them as investors in LDBF. *See* HPOPS Compl. ¶ 74 (". . . "SSgA owed HPOPS, a beneficiary of the fund, fiduciary duties with respect to the investments made by the Limited Duration Bond Fund" and "SSgA violated its fiduciary responsibilities . . . by improperly investing the bond fund's assets into a single industry sector . . . ."); Memorial Hermann Compl. ¶ 42 ("State Street, in handling Memorial Hermann's and HePIC's investments in a manner inconsistent with the Investment Objective and other representations made to Memorial Hermann and HePIC, breached its duties owed to Memorial Hermann and HePIC as a fiduciary . . . .").

- Both argue that State Street misrepresented the nature of LDBF, including that the securities in which it invested would be "highly-quality" or "highly rated." *See* HPOPS Compl. ¶ 87; Memorial Hermann Compl. ¶ 29.

- Both argue that State Street "favored" other clients during the summer of 2007 by answering those clients' questions and by funding redemptions when redemption requests were received. *See* Ferguson MH at 15-24; Ferguson HPOPS at 5-15.[3]

HPOPS argues that dispositive motions must necessarily turn on the interpretation of the Investment Management Agreement ("IMA") between State Street and HPOPS. HPOPS Mem. at 13. However, the Texas laws incorporated into the IMA are not remarkable; they merely impose a generic fiduciary duty that does not require the expertise of a federal judge sitting in Texas as opposed to New York. *See In re Data Gen. Corp. Antitrust Litig.*, 510 F. Supp. 1220, 1227-28 (J.P.M.L. 1979) ("The fact that the transferee court may have occasion to apply Massachusetts law also serves as no impediment to transfer" because "[i]t is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state.") (quoting *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 407 F. Supp. 244, 246-47 (J.P.M.L. 1976)); *In re Armored Car Antitrust Litig.*, 462 F. Supp. 394, 396 (J.P.M.L 1978) (holding that centralization was appropriate and finding "unpersuasive" plaintiff's argument that transfer should be denied "because a Maryland court might be better able to apply Maryland law" since "Maryland law, if applicable, [would] be duly applied by the transferee judge").[4]

For this same reason, Memorial Hermann's suggestion that a Texas court would be better suited to decide its pending motion to amend its Second Amended Complaint because Texas choice-of-law principles may be invoked, Memorial Hermann Mem. at 2, is without merit. *See*

---

[3] "Ferguson MH" refers to the initial report of J. Philip Ferguson dated January 15, 2010, in the *Memorial Hermann* litigation, attached hereto as Exhibit 1 to the Declaration of Robert A. Skinner, dated June 1, 2010 ("Skinner Decl."). "Ferguson HPOPS" refers to the initial report of J. Philip Ferguson dated January 15, 2010, in the *Houston Police* litigation, attached hereto as Skinner Decl. Ex. 2.

[4] Contrary to HPOPS's assertion, HPOPS Mem. at 6, State Street does not, and never did, assert counterclaims against F.W. Webb or Memorial Hermann.

*Integrated Res.*, 851 F. Supp. at 564-65 (applying Texas choice-of-law principles to interpret contractual choice of-law-provision, holding that New York law applied to certain claims, and dismissing claims under that law). Memorial Hermann made a similar argument prior to transfer, contending that because Memorial Hermann and HPOPS brought actions under state common law, they should not be coordinated with cases brought under the Employee Retirement Income Security Act. (*See* Doc. 1 at 1). However, the Panel rejected this argument against centralization, noting that:

> [t]hese actions revolve around the same core of factual issues relating to State Street's representations regarding its investment strategy for its bond funds and their investment in high-risk subprime asset-backed securities and related financial instruments. Discovery ***and other pretrial proceedings*** will undoubtedly overlap, as each action is at least indirectly tied to the same bond fund, and the same group of State Street employees managed all of the bond funds at issue. Section 1407 centralization will ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary.

*Id.* at 1-2 (emphasis added). As in nearly every case coordinated for pretrial proceedings, the finer points of these cases include case-specific facts that would be addressed should the cases proceed to trial. At this stage, however, the overlap in fact and law is such that continued coordination would further the purposes of the MDL statute.

Transferee courts routinely entertain motions for summary judgment prior to remand, and in cases far more procedurally complex than these. The Panel in *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004), consolidated dozens of cases comprising seven separate dockets involving market timing/late trading allegations against six different families of mutual funds. *Id.* at 1360. Some actions were brought by securities holders under the federal securities laws and others were brought by shareholders suing derivatively on behalf of the involved funds. *Id.* at 1361. Despite the various defendants, funds, and legal theories implicated, Judge Motz granted summary judgment in favor of certain defendants in multiple opinions. *See In re Mut. Funds Inv. Litig.*, 590 F. Supp. 2d 741, 751-52 (D. Md. 2008) (granting summary

judgment in favor of three defendants as to securities fraud claim based on arranged market timing agreements because plaintiffs had been fully compensated by defendants regulatory settlement); *In re Mut. Funds Inv. Litig.*, 626 F. Supp. 2d 530, 531 (D. Md. 2009) (granting summary judgment in favor of three defendants as to non-arranged market timing because plaintiffs failed to establish scienter).[5]

The cases cited by Memorial Hermann and HPOPS either are completely inapposite or actually militate against remand. In fact, in several of the cases cited by Plaintiffs, prior to remand, courts had previously or concurrently ruled on motions for summary judgment and motions to exclude experts, or had found that the deadline for such motions had passed.[6] *See In*

---

[5] *See also In re Citigroup Inc. Capital Accumulation Plan Litig.*, MDL No. 1354, 2008 WL 3982065, at *1, 17-18 (D. Mass. Aug. 8, 2008) (granting defendant's motion for summary judgment on multiple common law and contract theories in one member case after examining applicable state's public policy, and noting "[t]he cases have proceeded piecemeal, each member case differing slightly because it applies a different state's law"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 685 F. Supp. 2d 186 (D. Mass. 2010) (granting plaintiff's motion for partial summary judgment against thirteen defendants on Medicare fraud claims under New York's False Claims Act for nine drugs); *Gypsum Wallboard*, 340 F. Supp. at 991-92 (rejecting remand because "most efficacious course to follow is to allow [transferee judge] to rule on the summary judgment motion [because his] familiarity with this litigation affords the parties the opportunity of an expeditious resolution of [the] motion").

[6] Similarly, the other cases cited by Plaintiffs fail to provide support that remand is appropriate for the cases at bar. The Panel in *In re King Res. Co. Sec. Litig.*, 458 F. Supp. 220 (J.P.M.L. 1978), remanded the only two cases remaining in the MDL *after* pretrial procedures had been completed in one of the cases and where the other case was described as "a simple action." *Id.* at 221; *see also In re Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000) (remanding only case still remaining in the MDL); *In re Multidistrict Civil Actions Involving Air Crash Disaster Near Dayton, Ohio, on March 9, 1967*, 386 F. Supp. 908, 909 (J.P.M.L. 1975) (remanding case upon finding that there were no other actions remaining in the litigation and that "no purpose would be served by delaying remand of this action"); *In re Evergreen Valley Project Litig.*, 435 F. Supp. 924, 924 (J.P.M.L. 1977) (remanding where the only other cases in the MDL had related cases pending in state court and thus would be remanded because consolidated pretrial discovery in federal court was unnecessary; as a result the case at issue would "no longer benefit from multidistrict treatment"). Further, the Panel in *In re Air Crash Disaster at Tenerife, Canary Islands on March 27, 1977*, 461 F. Supp. 671 (J.P.M.L. 1978), remanded an action after the parties had already stipulated as to liability and the only remaining question was the amount of compensatory damages, noting that "the common questions of fact in the present litigation primarily concern the issue of liability, whereas the issue of damages is unique with respect to

re *Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 798-799 (N.D. Ohio 2004) (entertaining motions for summary judgment); *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, MDL No. 1700, 2010 WL 415285, at *4 (N.D. Ind. Jan. 22, 2010) ("The deadline for expert discovery and filing of dispositive motions as to the determination of employee and independent contractor status – the overriding centralized issue in this case – has expired."); *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1375 (J.P.M.L. 2003) (transferee court already granted summary judgment in favor of the defendants for one class of claims); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1998 WL 118060, at *8-13 (E.D. Pa. Jan. 12, 1998) (prior to remand, MDL court granted partial judgment on pleadings and issued rulings on motions for summary judgment and expert witness motions, including rulings to strike expert report and exclude certain proffered testimony); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, MDL No. 1721, 2010 WL 934268, at *5-6 (D. Kan. March 11, 2010), (MDL court had already ruled on some motions to exclude expert testimony, motions for summary judgment, and motions in limine).

Even if each case's unique factual issues dominated over the common questions (which is not the case), this Court remains in a better position to consider and rule on dispositive motions

---

each person who was aboard the aircraft." *Id.* at 672-73. And the court in *In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004), deferred to the transferor courts on motions to dismiss after defendants asked the court to make "global rulings" on the cases, despite the fact that the case "involve[d] over 300 cases and the substantive law of at least three states." Finally, all of the *Insurance Brokerage Antitrust Litigation* cases cited by Plaintiffs are inapposite. *See In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 580238, at *5 (D.N.J. Mar. 3, 2009) (remanding where plaintiff challenged federal subject matter jurisdiction and court found that such a challenge would have to be decided before filing of dispositive motions); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 1874085, at *3-4 (D.N.J. June 30, 2009) (suggestion of remand based on two "unique" factors: (1) case might have been prejudiced by continuing participation in MDL; and (2) issues of federal subject matter jurisdiction would have to be decided before filing of dispositive motions); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 4796662, at *1-2 (D.N.J. Dec. 9, 2009) (remand appropriate where amended complaint removed previous allegations regarding payment of contingent commissions, a "cornerstone[]" of the MDL and the reason the case was transferred initially).

and the admissibility of certain expert testimony. Although courts "ha[ve] the discretion to remand a case when everything that remains to be done is case-specific," courts also emphasize that "[t]his does not mean that consolidated proceedings have concluded at the point that only case-specific proceedings remain." *In re Wilson*, 451 F.3d 161, 172-73 (3d Cir. 2006) (quoting *In re Patenaude*, 210 F.3d 135, 146 (3d Cir. 2000)). Indeed, pretrial proceedings do not "los[e] their nature as 'coordinated or consolidated pretrial proceedings' [just] because there are no issues or parties in common between" the remaining cases in the MDL; courts have found that "[t]his misunderstands the meaning ascribed to 'coordinated or consolidated.'" *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 37 (D.D.C. 2007). As a result, "cases may be coordinated, and thus serve the purposes of the [MDL] statute, even if all other cases have already been disposed of, so long as there is some 'common core' that makes it more just or efficient that the cases continue to be handled in one court or before one judge." *Id.* (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998)); *see also In re Wilson*, 451 F.3d at 170 ("'[A] proceeding that relates only to a single individual's case or claim can nonetheless be coordinated,' as coordination can be found even if common issues are present only in relation to cases that have already terminated.") (quoting *Patenaude*, 210 F.3d at 143); *Patenaude*, 210 F.3d at 144 ("To be coordinated, it is not necessary that common issues are being contemporaneously addressed.").

### C. This Court should preside over pretrial proceedings at this stage to prevent inconsistent outcomes.

In addition to its dispositive motions, State Street plans to submit motions to strike the reports of plaintiffs' several expert witnesses, two of which are common to the *Memorial Hermann* and *Houston Police* cases. "[A]s a general matter, MDL transferee courts should dispose of as many pretrial matters as possible before a case is returned to the trial court." *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 39 (D.D.C. 2007).

Transferee courts commonly issue rulings on the admissibility of expert testimony, a task that this Court is uniquely situated to complete, considering the overlap in both experts and issues among the cases. *In re Ocean Bank*, 481 F. Supp. 2d 892, 898 (N.D. Ill. 2007) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592, 596-97 (1993)) ("The [MDL] Court may properly consider the admissibility of expert testimony prior to trial as part of the 'screening' or 'gatekeeping' role assigned to it by the Supreme Court."). In fact, "[b]ecause MDL litigation is designed to streamline complex litigation by, in part, having one court rule on issues that would otherwise come before multiple courts, this argument [regarding the admissibility of expert testimony] favors a decision at this stage." *Id.* at 899.[7]

Memorial Hermann and HPOPS share two experts, Lawrence P. Weiner and J. Philip Ferguson. Notably, the reports submitted by Messrs. Weiner and Ferguson pursuant to Fed. R. Civ. P. 26(a)(2) are nearly identical in most substantive respects, even to the point where the incorrect plaintiff (and facts regarding that plaintiff) is referenced in a number of instances. In Mr. Weiner's reports, for example, the following topic headings are just a small sample of those that are identical to both reports (or nearly so):

- "State Street Misrepresented the LDBF as Diversified" (Weiner MH at 4; Weiner HPOPS at 15);[8]

---

[7] *See also In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2001 WL 454586 at *1 (E.D. Pa. Feb. 1, 2001) (granting eight *Daubert* motions, five in part and three in full, to exclude several experts' testimony based on lack of scientific reliability and lack of qualifications and noting that a transferee court's ruling on the admissibility of expert testimony can "enhance judicial economy by disposing of *Daubert* issues applicable to the vast majority of cases within [the] MDL"); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, MDL No. 1721, 2009 WL 1357234, at *1-2 (D. Kan. May 12, 2009) (granting motion to exclude proposed expert testimony and rejecting argument that motion to exclude premature because part of MDL Court's duty "includes evidentiary rulings on common issues").

[8] "Weiner MH" refers to the initial report of Lawrence P. Weiner dated January 15, 2010, in the *Memorial Hermann* litigation, attached hereto as Skinner Decl. Ex. 3. "Weiner HPOPS" refers to the initial report of Lawrence P. Weiner dated January 15, 2010, in the *Houston Police* litigation, attached hereto as Skinner Decl. Ex. 4.

- "An All-RMBS Portfolio is <u>Not</u> Diversified" (Weiner MH at 13; Weiner HPOPS at 23);
- "State Street Failed to Disclose that the LDBF was Leveraged" (Weiner MH at 14; Weiner HPOPS at 26);
- "LDBF was managed as a 'Portable Alpha' Vehicle, not to 'Preserve Capital'" (Weiner MH at 24; Weiner HPOPS at 36);
- "State Street Mismanaged the LDBF" (Weiner MH at 30; Weiner HPOPS at 50);
- "State Street was Aware of Deteriorating Mortgage Market Conditions in 2006-7" (Weiner MH at 31; Weiner HPOPS at 51);
- "Portfolio Managers Failed to Properly Analyze and Vet Securities" (Weiner MH at 36; Weiner HPOPS at 56);
- "The LDBF Exceeded its Risk Budget in 2007" (Weiner MH at 44; Weiner HPOPS at 63);
- "LDBF portfolio managers added to ABX position and ignored required internal procedures" (Weiner MH at 46; Weiner HPOPS at 66);
- "ABX Trade Demonstrates LDBF Managers' Hedge Fund[-like] Mentality with Regard to the Fund [LDBF]" (Weiner MH at 48; Weiner HPOPS at 67).

Likewise, Mr. Ferguson identifies many of the same broad sections in both reports, as identified in his "Summary of Expert Opinions" (Ferguson MH at 3-4; Ferguson HPOPS at 3-5). The shared sections include "Breach of Most Vital Fiduciary Duty," "Deficiencies in Departmental Organization, Leadership, and Oversight," "Corporate Culture," "Failure of Proper Disclosure Regarding Composition of [the LDBF] Portfolio," "Failure of Proper Disclosure Regarding Leverage," "Operational Inadequacies and Procedural Breakdown," "Awareness of Deteriorating Market," and "Internal Skepticism." *Id.* In addition, in making suitability arguments on behalf of both Memorial Hermann and HPOPS, Mr. Ferguson repeats his contention that State Street disregarded both Memorial Hermann's and HPOPS's purported "preservation of capital" objectives. *See* Ferguson MH at 3 ("'Preservation of Capital' was one of MHHS's primary investment criteria. SSgA knew this, yet deliberately and intentionally made investments that subjected the portfolio to undue risk without proper disclosure of that risk to MHHS."); Ferguson HPOPS at 4 ("SSgA should have known that 'Preservation of Capital'

- 14 -

was one of the primary investment criteria for the cash collateral account of an unleveraged commodity strategy, yet SSgA deliberately subjected HPOPS's investment to excessive and imprudent risk. Additionally, SSgA did not provide proper disclosure of that risk to HPOPS.").

By having one court rule on State Street's motions to strike these expert reports, as well as the motions for summary judgment, judicial resources are preserved and consistency of outcomes is assured. *See H&R Block*, 435 F. Supp. 2d at 1348-49 (purposes of coordination include to "conserve the resources of . . . the judiciary" and to "prevent inconsistent pretrial rulings").

## CONCLUSION

For the reasons set forth herein, State Street respectfully requests that the Court deny Plaintiffs' Motions for Suggestion of Remand.

Dated: June 1, 2010

ROPES & GRAY LLP

By: /s/ Harvey J. Wolkoff
Harvey J. Wolkoff
Robert A. Skinner
Daniel J. Maher
One International Place
Boston, MA 02110
Tel: (617) 951-7000
Fax: (617) 951-7050
harvey.wolkoff@ropesgray.com
robert.skinner@ropesgray.com
daniel.maher@ropesgray.com

*Attorneys for Defendants State Street Bank and Trust Company and State Street Global Advisors, Inc.*